AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Franklin Beckwith and<br>Johnesha Travis<br><br>*Defendant(s)* | )<br>)<br>) Case No. 21-6173-HUNT<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 28, 2020 - October 29, 2020  in the counties of  Broward and Miami-Dade  in the
Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit wire and bank fraud |
| 18 U.S.C. § 1343 | Wire fraud |
| 18 U.S.C. § 1344 | Bank Fraud |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Caleb King, SA CGIS
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by telephone

Date: 3/23/2021

_____
*Judge's signature*

City and state:  Fort Lauderdale, Florida        Patrick M. Hunt, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Caleb D. King, being duly sworn, do state and attest as follows:

## AGENT BACKGROUND AND INTRODUCTION

1. This Affidavit is submitted in support of an application for a Criminal Complaint charging JOHNESHA TRAVIS ("TRAVIS") and FRANKLIN BECKWITH ("BECKWITH") with conspiracy to commit wire fraud and bank fraud, wire fraud, and bank fraud, in violation of Title 18, United States Code, Sections 1349, 1343, and 1344, from on or about May 28, 2020, continuing to and through at least October 29, 2020.

2. TRAVIS and BECKWITH participated in a scheme to obtain by fraud tens of thousands of dollars from a forgivable loan through the Paycheck Protection Program ("PPP") by submitting a fraudulent PPP loan application on behalf of the their limited liability company Luxury Yacht Rentals Plus, LLC ("Luxury Yacht").

3. I am a Special Agent with the Coast Guard Investigative Service ("CGIS"). Prior to my employment with CGIS, I was a Special Agent with the Defense Criminal Investigative Service ("DCIS") for 7 years and the United States Army Criminal Investigation Division Command ("USACIDC") for 1.5 years. I am a graduate of USACIDC'S Special Agent Course at Fort Leonard Wood, Missouri, and the DCIS Special Agent Basic Training Program at the Federal Law Enforcement Training Center. I also obtained a Juris Doctorate degree in 2020.

4. My law enforcement authority is derived from Title 14, United States Code, Section 525, which grants CGIS Special Agents law enforcement authority for any crime committed within the authority of the United States Coast Guard. The United States Coast Guard has very broad authority to enforce laws related to maritime commerce, including the investigation of fraudulent loans taken out by yacht chartering businesses.

5.      This Affidavit is based on my personal investigation and on information obtained from other law enforcement personnel and witnesses, documents, and public records. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain every detail about this investigation of which I am aware.

## PROBABLE CAUSE

### *Overview of the Paycheck Protection Program*

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

7.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8.      A PPP loan application must be processed by a participating lender. If a PPP loan

application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9. The CARES Act specifies eligibility criteria that a participating lender must consider, specifically,

> In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower- was in operation on February 15, 2020; and had employees for whom the borrower paid salaries and payroll taxes; or paid independent contractors, as reported on a Form 1099-MISC.

Title 15, United States Code, Section 636(a)(36)(F)(ii)(II)(aa)-(bb).

10. PPP loan proceeds must be used by the business for certain permissible business expenses such as payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *The Fraudulent PPP Loan Application*

11. According to Florida's Division of Corporations website ("SunBiz"), Luxury Yacht was incorporated in 2019 with its principal place of business listed in Miami, Florida. According to the incorporation documents, the manager and registered agent of Luxury Yacht was A.K.

12. A.K.'s home address is listed as Luxury Yacht's principal place of business.

13. I interviewed A.K., and A.K. stated that he/she does not know BECKWITH or TRAVIS, nor is he/she even aware of the company. I am not aware of any evidence linking A.K. to TRAVIS or BECKWITH.

3

14. On May 28, 2020, per Luxury Yacht's annual report available on SunBiz, TRAVIS was made the manager and registered agent of Luxury Yacht. However, A.K.'s home address continues to this day to be listed on SunBiz as Luxury Yacht's principal place of business.

15. According to bank records, on or about June 8, 2020, TRAVIS and BECKWITH opened a business checking account (the "Bank Account") in the name of Luxury Yacht. The Bank Account was opened in person at a bank branch in Broward County. TRAVIS listed herself on the bank opening documents as Luxury Yacht's manager. BECKWITH listed himself as an authorized signer on the Bank Account.

16. From on or about June 11, 2020, through on and about June 16, 2020, a PPP loan application was electronically prepared and submitted with supporting documents on behalf of Luxury Yacht, via interstate wires to a loan processor ("Bank Processor 1"), to a federally insured bank ("Bank 1") in the amount of $152,605. The Borrower Application Form was electronically signed with the name "Johnesha Travis."

17. The Borrower Application Form named Luxury Yacht as the Applicant, TRAVIS as the Primary Contact and sole owner, and A.K.'s residential address as the business address. Of note, the "Business Phone" number listed on the form, according to AT&T documents, is a cell phone number registered to BECKWITH ending in 1913. As further discussed below, I spoke with BECKWITH at this number.

18. Luxuryyachtplus@yahoo.com is the email address that was used to submit the PPP loan application and supporting documents. Yahoo records indicated that the email account was registered in TRAVIS's name, but the phone number linked to the account is the AT&T cell phone number registered to BECKWITH ending in 1913.

4

19. The Borrower Application Form contained the following materially false information:

    a. That Luxury Yacht's average monthly payroll was $61,402;

    b. That Luxury Yacht had six employees; and,

    c. That the purpose of the loan was for payroll and utilities.

20. The Borrower Application Form also contained the following certifications, among others, each of which was initialed with the letters "JT":

    a. The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

    b. The funds will be used to retain workers and maintain payroll or make mortgages interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

    c. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law [.]

21. The Luxury Yacht PPP loan application also included the following supporting documents: (1) a purported IRS Form 941 (Employer's Quarterly Federal Tax Return) for the first quarter of 2020, and (2) a purported February bank statement from the Bank Account. The bank statement appears to be fraudulent; it purports to be from February 2020, but the Bank Account was not opened until June 8, 2020.

22. The purported Form 941 submitted with the loan application showed a first quarter payroll of $183,125.00 for six employees. Importantly, the Form 941 is unsigned despite the requirement that it be signed. Moreover, as discussed below, there is no evidence that Luxury

Yacht has or pays any employees.

23. The Luxury Yacht PPP loan application was approved, and on June 16, 2020, Bank 1 wired to the Bank Account loan proceeds in the amount of $152,605. I have reviewed records from the Bank Account, and it does not appear that any funds obtained from the PPP loan were used for payroll or utilities.

24. In fact, the bank records reflect a number of debit card purchases and transactions that do not appear to be related to any authorized purposes, as per the Borrower Application Form. For example, there are transactions at restaurants such as Prime 112, Outback Steakhouse, Yolo Las Olas, Sushi Siam Brickell, Southport Raw Bar, and Twin Peaks Davie. There are also transactions at Tryp By Wyndham Fort Lauderdale (a hotel) and the Nature's Remedy Shop.

25. The bank records also reflect approximately $114,000 in cash withdrawals by TRAVIS from June 16, 2020, to October 27, 2020.

26. As of October 30, 2020, there was only about $37,538.07 remaining in the Bank Account.

### *TRAVIS's and BECKWITH's Statements to Law Enforcement*

#### *1. Interview of Johnesha Travis*

27. On October 16, 2020, I interviewed TRAVIS at her home in Fort Lauderdale, Florida. TRAVIS stated that she is the owner of Luxury Yacht. Specifically, TRAVIS explained that BECKWITH asked her to be the owner of Luxury Yacht for credit purposes. According to TRAVIS, the purpose of the company was to charter yachts for third parties. When asked, she stated that Luxury Yacht owned boats and had employees. However, she stated that she was not in possession of any business records pertaining to Luxury Yacht. After further questioning, she admitted that Luxury Yacht did not in fact have any boats or employees.

28. I asked TRAVIS if she applied for a PPP loan on behalf of Luxury Yacht. TRAVIS stated that she was aware that BECKWITH applied for a PPP Loan on behalf of the company. She claimed that she did not take part in preparing or submitting the application. She admitted, however, to signing the loan application, which she claimed she did on BECKWITH's phone in the parking lot of her apartment building in Broward County.

29. TRAVIS further claimed that BECKWITH told her that they were going to use the proceeds of the loan to start a legitimate business. She admitted to knowing that Bank 1 deposited the loan proceeds into the Bank Account because she received monthly bank account statements to her email. TRAVIS showed me the bank statements on her computer.

### 2. Interview of Franklin Beckwith

30. On October 19 and 20, 2020, I interviewed BECKWITH by telephone. BECKWITH admitted to me that he was in fact the owner of Luxury Yacht and that he had asked TRAVIS to be the "owner" for credit purposes. BECKWITH referred to himself as the owner, director, and manager of Luxury Yacht. He further claimed that TRAVIS had no knowledge regarding Luxury Yacht's employees or operations.

31. During my conversations with BECKWITH, I asked him about Luxury Yacht's business purposes. During one conversation, he stated that the company charters yachts that belong to third parties. When I questioned him further about this, he responded that the company's incorporation documents allow it to partake in all legal business; therefore, according to BECKWITH, it can sell cookies or charter boats.

32. During a second conversation, I asked him again about the purpose of the business. This time, he claimed that the original purpose of the business was to purchase a boat for charters, but the company was unable to do that; therefore, in the end, he decided that that the company

7

would rent cars. However, when I last checked on January 27, 2021, there were no cars registered to Luxury Yacht.

33. I asked BECKWITH about the number of individuals employed by the company, and he responded that the company had six employees. When asked for the names of these employees, BECKWITH did not provide me with a single name. Instead, he told me that he would email me a list of employees along with other business records. He never did.

34. BECKWITH also claimed that he used ADP Payroll Services to pay his Luxury Yacht employees. However, ADP has indicated that they have no records relating to Luxury Yacht. ADP did provide payroll records for a second company that BECKWITH is listed as the manager of on SunBiz. I asked BECKWITH whether the Luxury Yacht employees were also employees for this second company, BECKWITH stated that each company had different employees.

35. Finally, I checked with the Florida Department of Revenue to see what information, if any, it had on file about Luxury Yacht. As of December 23, 2020, the Florida Department of Revenue had no reemployment assistance tax reports for Luxury Yacht or wage information for employees of Luxury Yacht.

## **CONCLUSION**

36. Based on the information provided above, I respectfully submit that probable cause exists to believe that TRAVIS and BECKWITH have committed conspiracy to commit wire fraud and bank fraud, wire fraud, and bank fraud, in violation of Title 18, United States Code, Sections 1349, 1343, and 1344.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
CALEB D. KING, SPECIAL AGENT
COAST GUARD INVESTIGATIVE SERVICE

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 23rd day of March 2021

_____
HONORABLE PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA

v.

FRANKLIN BECKWITH and
JOHNESHA TRAVIS,

    **Defendants.**
_____/

## COMPLAINT COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? __ Yes  X  No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? __ Yes  X  No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 8, 2019 (Mag. Judge Jared M. Strauss)? __ Yes  X  No

4. Did this matter originate from a matter pending in the southern region of the United States Attorney's Office prior to November 23, 2020 (Judge Aileen M. Cannon)?  x Yes  __ No

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

By: *Bertila Fernandez*
     BERTILA LILIA FERNÁNDEZ
     Assistant United States Attorney
     Fla. Bar No. 124092
     99 Northeast 4th Street
     Miami, FL. 33132-2111
     Tel: (305) 961-9099
     Bertila.Fernandez@usdoj.gov